## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA
## BATON ROUGE DIVISION

| | |
|---|---|
| **ZLOOP, INC. (by and through Patrick Trae' O'Pry, Plan Administrator)** **Plaintiff** | **CASE NO.: 3:17-cv-00222** |
| **VERSUS** | **JUDGE BRIAN A. JACKSON** |
| **PHELPS DUNBAR, L.L.P., HEATHER DUPLANTIS, MICHAEL D. HUNT, KELLY KROMER BOUDREAUX, and MARC G. MATTHEWS** **Defendants** | **MAG. JUDGE RICHARD L. BOURGEOIS, JR.** |
| | **JURY TRIAL DEMANDED** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## SECOND AMENDED COMPLAINT FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes plaintiff, ZLOOP, INC. (by and through Patrick Trae' O'Pry, Plan Administrator)(hereinafter referred to as "**Zloop**").  ZLOOP seeks herein to amend its original Complaint for Damages as set forth below.

I.

Zloop hereby inserts the following paragraphs (and related exhibits) between paragraphs 92 and 93 of Zloop's original Complaint For Damages.

"92.05

On February 10, 2017, Phelps Dunbar LLP sued Zloop, Inc. in a Delaware bankruptcy adversary action, Case 15-11660-KJC, Doc. 722 seeking a declaratory judgment that it owed Zloop no money on any theory, including but not limited to the bankruptcy, legal malpractice and other causes of actions asserted by Zloop herein.  **Exhibit A.05.**  Zloop filed a Motion to Dismiss (**Exhibit A.06**), following which the parties agreed to dismiss that action voluntarily.  **Exhibit A.07.**

1

92.1

On April 18, 2017, Boston and LaBarge were indicted by the federal government following a year-long investigation that began after Mosing's Complaint was filed.  **Exhibit A1.**  The indictment closely tracks the factual allegations made by Mosing in his Louisiana Complaint.  The allegations against Boston and LaBarge, if true, also stated causes of action in favor of Zloop against Boston and LaBarge, including those filed by Zloop against Boston and LaBarge in a Second Amended, Supplemental and Restated Complaint filed on March 30, 2017.  **Exhibit A3.**

92.2

There is nothing in Phelps' file discussing whether Phelps had a conflict of interest or not. However, a September 3, 2014 email produced by the law firm that connected Zloop with Phelps (Parker Poe) appears to demonstrate that Phelps delegated its duty to rule out conflicts of interest to Parker Poe.  **Exhibit A3.5.**  This email was not in the file produced by Phelps to Zloop in response to the CRO's letter, but should have been.  Phelps never advised Zloop of the causes of action it may have against Boston and LaBarge if the allegations of Mosing's Complaint were true. Phelps never advised Zloop that the time limits for such claims were running, and that failing to immediately act could allow Boston and LaBarge to take additional unlawful actions at Zloop's expense. Phelps never advised Zloop of the risks associated with a limited or joint representation. Phelps would have had to have made these disclosures to one or more Zloop representatives, other than Boston or LaBarge, for Zloop to be able to give informed consent to an engagement that was limited only to a motion to transfer venue.  Phelps knew it was the only law firm representing Zloop on Mosing's complaint.   At no time during any part of its representation did Phelps discuss with Zloop a potential, much less actual, conflict of interest in its ongoing representation of Boston, LaBarge and Zloop. At all applicable times, Zloop had other officers, directors or agents who could

have evaluated an actual or potential conflict and provided proper consent for Zloop to any such conflict, and received and acted upon recommendations from Phelps.  Zloop's legal expert, Dane Ciolino, supports the allegations made herein regarding the applicable standards of care and their being breached and will testify in support of same when called.[1]

92.3

On December 23, 2014, Boston and LaBarge contacted Phelps to defend Zloop in a second suit on promissory note ($14,000,000) that Mosing filed in Texas.  **Exhibit A4.**  No additional engagement letter was executed—venue was never an issue—and Phelps undertook the defense of Zloop without any conflict waiver.  **Exhibit A5.**  The Texas suit alleged that Zloop borrowed $14 million several months earlier and then stopped paying the note.  **Exhibit A6.**  All Phelps did in this action was delay the $14,000,000 judgment that it told Zloop, through Boston and LaBarge, was inevitable.

92.4

On information and belief, neither Boston nor LaBarge agreed to a limited engagement with Phelps.  In the email dated March 20, 2015 from Defendant Duplantis to Boston, Boston did not agree that Mosing's TRO motion was outside the scope of the representation.  **Exhibit A7.**  No Zloop representative other than Boston or LaBarge agreed to a limited engagement with Phelps. Mosing's March 20, 2015 TRO filing placed front and center the issue over whether Boston and LaBarge had fabricated a UCC1 to defraud Mosing.

---

[1] Dane Ciolino, Alvin R. Christovich Professor of Law, Loyola University New Orleans College Of Law, author and editor of <u>Louisiana Legal Ethics, Standards and Commentary</u> (2013), speaker and legal expert accepted in state and federal courts throughout Louisiana.

3

92.5

After bankruptcy the same magistrate judge who granted Phelps' Motion to Transfer Venue reversed his earlier ruling, mooting the need for an appeal.  **Exhibit A8.**"

92.6

Phelps' actual work, which regularly addressed issues other than venue, corroborates that the "initial focus" language of the engagement letter was merely an order of work, not a limited scope of engagement as Phelps' claims.  Examples include **Exhibits A9, A10, A11, A12**.

92.7

The months of delay caused by the Motion to Transfer Venue allowed Boston and LaBarge time and cover to borrow $4.8 million, secured by Zloop property that was previously unencumbered.  **Exhibits A2, A13 and A14.**

92.8

After Phelps filed its Motion to Transfer Venue, Phelps was ordered to produce Mosing's original signatures after Phelps' motion was shown to rely on Texas Franchise Documents with exact duplicate signature pages on five of nine documents.  **Exhibit A15.**  Phelps recognized the court could rule against them on venue by holding the Franchise Termination Agreement controlled.  **Exhibit A16.**  Phelps evaluated the voluminous and complex 2013 private placement memorandum of Zloop as part of their initial document review.  **Exhibit A17.**  Phelps' representation of Boston, LaBarge and Zloop lasted until December 20, 2016, the date they were allowed to withdraw from representation.

92.9

If Zloop would have been represented by counsel without connections to Boston or LaBarge, Zloop would have:

- taken over control of Zloop's funds from Boston and LaBarge;

- taken over control of Zloop's real property from Boston and LaBarge;

- not filed or voluntarily dismissed the Motion to Transfer Venue to North Carolina;

- negotiated a settlement agreement with Mosing on the Louisiana and Texas actions that allowed Zloop to stay in business and avoid bankruptcy;

- filed suit against Boston and LaBarge to stop their ultra vires actions, including looting of Zloop's assets (including but not limited to Zloop funding the NASCAR racing career of Boston's son) and filed one or more actions seeking injunctions or temporary restraining orders, and to recover Zloop's assets before Boston and LaBarge had the chance to dissipate them;

- prevented Boston and LaBarge from using Zloop resources to sell Boston and LaBarge's stock to their friends and family through a friends and family stock offering;

- created accurate accounting books and records regarding Zloop's business;

- started to rebuild Zloop's reputation in the business that Boston and LaBarge's actions destroyed; and

- started to make a profit.

92.91

The sixth defendant is ABC Insurance Company, a foreign insurer doing business in Louisiana, who issued in Louisiana to defendants a policy of insurance that covers the damages sought herein against all defendants.  ABC Insurance Company contractually bound itself to be liable for, and satisfy in full all, judgments rendered against the other defendants."

II.

All other allegations and prayers remain the same.

5

AND FOR ALL GENERAL AND EQUITABLE RELIEF, ETC.

Respectfully submitted,

ALLEN & GOOCH
A Law Corporation

*/s/ JAMES H. GIBSON*

_____

JAMES H. GIBSON (#14285)
CHARLES M. KREAMER, SR. (#23171)
CLAY M. ALLEN (#2400)
2000 Kaliste Saloom Road, Suite 400 (70508)
Post Office Drawer 81129
Lafayette, LA  70598-1129
337-291-1300 – Direct Dial
337-291-1305 – Facsimile
E-Mail:  jimgibson@allengooch.com
COUNSEL FOR PETITIONER,
Zloop, Inc., successor to Zloop, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Lafayette, Louisiana, this 19th day of June, 2017.

*/s/ James H. Gibson*

_____

JAMES H. GIBSON