UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

ZLOOP, INC.                                CIVIL ACTION NO. 6:18-cv-00031 (Lead)
                                                            6:18-cv-00032 (Member)

VERSUS                                     JUDGE JUNEAU

PHELPS DUNBAR LLP, ET AL.                  MAGISTRATE JUDGE HANNA

### MEMORANDUM RULING

Before the court is the motion to compel the production of documents (Rec. Doc. 111), which was filed by the plaintiff, Zloop, Inc. The motion is opposed. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the motion is GRANTED IN PART and DENIED IN PART.

### Background[1]

In 2014, Kendall Mosing filed suit against Robert Boston, Robert LaBarge, and Zloop, Inc.[2] Mr. Mosing had invested in Zloop, an electronic waste recycling company, which was owned by Mr. Boston and Mr. LaBarge, and he asserted various claims for securities fraud, unfair trade practices, fraud, conversion, breach

---

[1] A full procedural history is set forth in the parties' joint status report filed on February 28, 2019 (Rec. Doc. 130).

[2] That lawsuit was assigned Civil Action No. 6:14-cv-02608 on the docket of the United States District Court for the Western District of Louisiana.

of contract, negligent misrepresentation, and detrimental reliance. In 2016, Mr. Mosing initiated a second lawsuit against Mr. Boston and Mr. LaBarge,[3] in which he alleged that he had been defamed. Protracted litigation in various civil actions in scattered venues ensued. Zloop, LLC and two related entities sought bankruptcy protection, and the bankruptcy court in Delaware confirmed a Chapter 11 Liquidation Plan in which Mr. Mosing was awarded an unsecured claim and control over the prosecution of Zloop, Inc.'s claims against third parties including Mr. Boston and Mr. LaBarge, effectively making Zloop, Inc. a plaintiff in Mr. Mosing's original lawsuit. Mr. Boston and Mr. LaBarge were also criminally prosecuted in North Carolina.

In September 2014, Phelps Dunbar LLP was retained to represent Mr. Boston, Mr. LaBarge, and Zloop with regard to the first lawsuit filed by Mr. Mosing. According to the retainer letter, attorneys Michael D. Hunt and Heather Duplantis would be doing most of the work on the file.

On November 29, 2016, the Plan Administrator for Zloop's bankruptcy proceeding retained the Allen & Gooch law firm to represent Zloop, Inc. in the

---

[3] That lawsuit was originally filed in Louisiana state court then removed to the United States District Court for the Western District of Louisiana, where it was assigned Civil Action No. 6:16-cv-01776. In September 2017, that suit was remanded to the 15th Judicial District Court, Lafayette Parish, Louisiana, for lack of subject-matter jurisdiction.

ongoing litigation in place of Phelps Dunbar.[4]  Two days later, on December 1, 2016, Charles M. "Chuck" Kreamer of Allen & Gooch advised Ms. Duplantis that Allen & Gooch would be filing a motion to substitute counsel.[5]  In the instant consolidated lawsuits, initiated in April 2017, Zloop, Inc. sued Phelps Dunbar and its individual attorneys Heather Duplantis, Michael D. Hunt, Kelly Romer Boudreaux, and Marc G. Matthews, for legal malpractice and other torts.  Zloop's primary complaint is that there was a conflict of interest between Zloop on the one hand and Mr. Boston and Mr. LaBarge on the other, allegedly resulting in Zloop being damaged by the joint representation.

## The Motion to Compel

In the pending motion to compel, Zloop, Inc., through its counsel James H. Gibson and Charles M. "Chuck" Kreamer of the Allen & Gooch law firm, seeks the production of seventeen e-mails that were sent by Phelps Dunbar lawyers to other lawyers in the same firm regarding ethical or professionalism issues involving the firm's joint representation of Zloop, Mr. Boston, and Mr. LaBarge.  The seventeen e-mails were exchanged on dates between December 5 and December 16, 2016 among defendant Heather Duplantis, defendant Michael D. Hunt, Phelps Dunbar attorney Christopher Ralston, and others at the Phelps Dunbar law firm with regard

---

[4]   Rec. Doc. 121-3 at 5.

[5]   Rec. Doc. 121-3 at 5.

to Allen & Gooch's request that Phelps Dunbar turn over its entire file and Allen & Gooch's request that Phelps Dunbar reimburse Zloop the sum of approximately $72,000 in attorneys' fees. The defendants claim that the documents are protected by the attorney-client privilege. Redacted versions of the documents were produced by Phelps Dunbar to Allen & Gooch (Rec. Doc. 120-1), and copies of the unredacted documents were submitted to this Court under seal for *in camera* review.

## Law and Analysis

The plaintiff alleged that the court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1332, and 1334. The facts set forth in the plaintiff's original compliant are insufficient to establish diversity jurisdiction. If this were a diversity case, Louisiana law would govern the issue of whether the attorney-client privilege precludes disclosure of the seventeen e-mails.[6] Since diversity jurisdiction has not been established, however, the common law as interpreted by federal courts governs this dispute.[7] What law governs the dispute is not critically important in

---

[6] See Rule 501 of the Federal Rules of Evidence; *Exxon Corp. v. St. Paul Fire & Marine Ins.*, 903 F.Supp. 1007, 1008–09 (E.D. La. 1995).

[7] Rule 501 of the Federal Rules of Evidence.

this case, however, because federal common law and Louisiana statutory law are materially similar concerning the attorney-client privilege.[8]

"The attorney-client privilege protects two related, but different, communications: (1) confidential communications made by a client to his lawyer for the purpose of obtaining legal advice; and (2) any communication from an attorney to his client when made in the course of giving legal advice, whether or not that advice is based on privileged communications from the client."[9] The purpose of the privilege:

> is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.[10]

"Because the privilege protects only confidential communications, the presence of a third person while such communications are made or the disclosure of an otherwise privileged communication to a third person eliminates the intent for confidentiality on which the privilege rests."[11] For a communication to be protected under the

---

[8] See, e.g., *Firefighters' Retirement System v. Citco Group Limited*, No. 13-373-SDD-EWD, 2018 WL 564945, at *2 n. 10 (M.D. La. Jan. 24, 2018); *Soriano v. Treasure Chest Casino, Inc.*, No. 95-3945, 1996 WL 736962, at *2 (E.D. La. Dec. 23,1996).

[9] *United States v. Mobil Corp.*, 149 F.R.D. 533, 536 (N.D. Tex. 1993).

[10] *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

[11] *Hodges, Grant & Kaufmann v. United States*, 768 F.2d at 721.

privilege, the proponent "must prove: (1) that he made a **confidential** communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding."[12] Communications by the lawyer to the client are also protected "if they would tend to disclose the client's confidential communications."[13]

The burden of demonstrating that the privilege applies rests on the party invoking the privilege.[14] After the privilege has been established, the burden shifts to the adverse party to prove any applicable exception.[15] Any ambiguity concerning whether the elements of a privilege claim have been met is construed against the proponent of the privilege.[16]

There is no presumption that a company's communications with counsel are privileged.[17] Instead, a fact-specific inquiry must be made.[18] The attorney-client

---

[12] *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997) (emphasis in original).

[13] *Hodges, Grant & Kaufmann v. United States*, 768 F.2d at 720.

[14] *Hodges, Grant & Kaufmann v. United States*, 768 F.2d at 720.

[15] *Equal Employment Opportunity Commission v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017).

[16] *Equal Employment Opportunity Commission v. BDO USA, L.L.P.*, 876 F.3d at 695.

[17] *Equal Employment Opportunity Commission v. BDO USA, L.L.P.*, 876 F.3d at 696.

[18] *Equal Employment Opportunity Commission v. BDO USA, L.L.P.*, 876 F.3d at 695.

privilege does not apply to materials that contain purely factual data.[19] Similarly, a document that simply transmits another document to other individuals without more is not protected by the attorney-client privilege.[20] Therefore, documents that were "carbon copied" to counsel for informational purposes rather than for legal advice are not privileged.[21] Furthermore, with particular applicability to this case, the general rule is that information regarding attorneys' fees is generally not privileged.[22]

---

[19] See, e.g., *Firefighters' Retirement System v. Citco Group Limited*, No. 13-373-SDD-EWD, 2018 WL 564945, at *2 (M.D. La. Jan. 24, 2018) (citing *United States v. Louisiana*, No. 11-470, 2015 WL 4619561, at * 5 (M.D. La. July 31, 2015)).

[20] *Texas Brine Company, LLC v. Dow Chemical Company*, No. 15-1102 c/w 15-3324, 2017 WL 5625812, at *1 (E.D. La. Nov. 21, 2017); *Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc.*, No. CIV.A. 03-1496, 2004 WL 1299042, at *6 (E.D. La. June 4, 2004); *Dixie Mill Supply Co., Inc. v. Continental Cas. Co.*, 168 F.R.D. 554, 559 (E.D. La.,1996) ("Mere transmittal or confirmation letters, which do not contain any confidential communications or attorney advice, opinion or mental impressions, are not privileged simply because they are written by or to an attorney.").

[21] See, e.g., *In re Alliant Insurance Services, Inc.*, No. 18-3041, 2018 WL 2389126, at *5 (E.D. La. May 17, 2018); *Vintage Assets, Inc. v. Tennessee Gas Pipeline Company, L.L.C.*, No. 16-0713, 2017 WL 2812967, at *5 (E.D. La. June 29, 2017); *Lambeth House, Inc. v. Liberty Restoration Group, LLC*, No. 17-00608, 2008 WL 11353688, at *4 (E.D. La. July 29, 2008); *Hasty v. Lockheed Martin Corp.*, No. 98-CV-1950, 1999 WL 600322 at *2 (E.D. La. Aug. 6, 1999) (citing *U.S. Postal Service v. Phelps Dodge Refining Corp.*, 852 F.Supp. 156 (E.D. N.Y. 1994)). See, also, *In re Avantel, S.A.*, 343 F.3d 311, 321 (5th Cir. 2003) (stating that sending a carbon copy of a document to an attorney "is clearly insufficient to establish the privilege.").

[22] *In re Grand Jury Proceedings*, 680 F.2d 1026, 1027 (5th Cir. 1982); *United States v. Davis*, 636 F.2d 1028, 1044 (5th Cir. 1981) ("financial transactions between the attorney and client, including the compensation paid by or on behalf of the client are not within the privilege except in special circumstances. . . ."); *Jeanbaptiste v. Wells Fargo Bank, N.A.*, No. 3:14cv264–K, 2014 WL 6790737, *3 (N.D. Tex. Dec. 1, 2014).

In this case, the defendants contend that they sought legal advice from a lawyer in their firm, Christopher Ralston, who was not working on this case but was a member of the firm's Ethics Committee and charged with addressing questions raised by any attorney at the firm regarding "the applicability, interpretation[,] or meaning of any of the rules of professional conduct."[23]

This Court finds that a law firm, like any other business, is entitled to in-house counsel. In this case, Phelps Dunbar established that it has policies in place regarding the consultation by its attorneys with particular lawyers in the firm designated as coverage counsel and also with particular lawyers in the firm designated as an Ethics Committee, to whom such issues may be addressed. This Court finds that it is immaterial that Mr. Ralston was a member of the Ethics Committee rather than the firm's officially designated coverage counsel. This Court finds that the defendants could have been in the position of a client seeking legal advice from Mr. Ralston, their attorney, when they approached him about Allen & Gooch's request for the file and the reimbursement of legal fees. Whether the seventeen e-mails are protected by the attorney-client privilege relating to communications between Mr. Ralston and the Phelps Dunbar attorneys providing services to Zloop, Mr. Boston, and LaBarge is the issue that must be resolved.

---

[23] Rec. Doc. 120 at 6.

Each of the seventeen e-mails has been carefully reviewed. This Court's findings are as follows:

1. E-mail dated December 5, 2015 at 3:56 p.m. from Ms. Duplantis to Mr. Ralston and Michael Hunt. (Rec. Doc. 121-3 at 1-7). This e-mail consists of two separate parts. In the first part, Ms. Duplantis provided Mr. Ralston and Mr. Hunt with a draft response to Jim Gibson's request that Phelps Dunbar turn over the entirety of its file to Allen & Gooch, and she requested their "consideration and comment." This Court interprets her comments as a request for legal advice. Accordingly, this Court finds that the second and third sentences of Ms. Duplantis's comments preceding the draft response to Mr. Gibson are protected by the attorney-client privilege. The second part of the e-mail is Ms. Duplantis's draft response to Mr. Gibson. This Court finds that the draft response is not protected by the attorney-client privilege because it was actually sent to Mr. Gibson and Mr. Kreamer on December 5, 2016 at 4:12 p.m. and then produced to the plaintiffs without redaction. (Rec. Doc. 120-1 at 20-21).

2. E-mail dated December 12, 2016 at 3:22 p.m. from Ms. Duplantis to Mr. Hunt and Mr. Ralston. (Rec. Doc. 121-3 at 8-10). This e-mail advised Mr. Hunt and Mr. Ralston that the magistrate judge had scheduled a telephone status conference, and it seeks their input regarding positions to be taken and information to be shared during the conference. This e-mail specifically references the conflict

9

of interest and requests legal advice from Mr. Ralston. Therefore, it is protected by the attorney-client privilege.

3. E-mail from Ms. Duplantis to Evelyn E. Hopes dated December 16, 2016 at 4:40 p.m., together with e-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 16, 2016 at 4:37 p.m. and e-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 16, 2016 at 4:27 p.m. (Rec. Doc. 121-3 at 11-12). In the earliest of the three e-mails in this chain, Ms. Duplantis passed along to Mr. Hunt and Mr. Ralston a letter from Allen & Gooch requesting the return to Zloop of $72,000 in legal fees and threatening legal action if the demand was not met. Ms. Duplantis indicated that she lacked sufficient competency in the field of bankruptcy law to evaluate the merits of the position taken by Allen & Gooch in the letter, but she did not request any legal advice from Mr. Ralston on that subject or with regard to the interpretation of the rules of professional conduct. This Court therefore finds that the e-mail sent at 4:27 p.m. is not protected by the attorney-client privilege. In the e-mail sent at 4:37 p.m., Ms. Duplantis forwarded some factual information to Mr. Hunt and Mr. Ralston that Ms. Duplantis had obtained from Phelps Dunbar's accounting department, and she also requested Mr. Hunt's and Mr. Ralston's "full consideration" before responding to Mr. Kreamer's e-mail. This Court interprets this e-mail as a request for legal advice; consequently, this Court finds that it is protected by the attorney-client privilege. The e-mail sent at 4:40 p.m.

simply added Ms. Hopes, another employee of the Phelps Dunbar law firm's accounting department,[24] to the e-mail chain. It does not contain a request for legal advice, and it is not subject to the attorney-client privilege. The e-mail sent at 4:27 p.m. and the e-mail sent at 4:40 p.m. pass along factual information rather than legal advice or a request for such advice, are related to Phelps Dunbar's billing of its former client, and do not relate to a request for legal advice with regard to ethics or professionalism but the merits of the reimbursement claim. Consequently, those two e-mails are not protected by the attorney-client privilege. The e-mail sent at 4:37 p.m., however, contains a request for legal advice, and it is protected by the attorney-client privilege.

4. E-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 16, 2016 at 4:27 p.m. (Rec. Doc. 121-3 at 13-14). This is a duplication of one of the e-mails addressed in Item No. 3, above. As noted above, this Court finds that this e-mail is not privileged.

5. E-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 16, 2016 at 4:27 p.m. (Rec. Doc. 121-3 at 15-16). This is another duplication of one of the e-mails addressed in Item No. 3, above. As noted above, this Court finds that this e-mail is not privileged.

---

[24] Rec. Doc. 120-2.

6. E-mail from Ms. Duplantis to Evelyn E. Hopes dated December 16, 2016 at 4:40 p.m., together with e-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 16, 2016 at 4:37 p.m. and e-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 16, 2016 at 4:27 p.m. (Rec. Doc. 121-3 at 17-18). This is a duplication of the e-mail string labelled as Item No. 3, above. As explained above, this Court finds that two of these e-mails are not privileged while the one sent at 4:37 p.m. is protected by the attorney-client privilege.

7. E-mail from Ms. Duplantis to Mr. Ralston, with a carbon copy to Mr. Hunt, dated December 8, 2016 at 11:15 a.m. (Rec. Doc. 121-3 at 19-27). This e-mail contains only the words "see below" and forwards to Mr. Hunt and Mr. Ralston instructions from the firm's client, Mr. LaBarge. The e-mail between Mr. LaBarge and Ms. Duplantis that is attached likely is a confidential communication subject to the attorney-client privilege. However, the e-mail from Mr. LaBarge to Ms. Duplantis was already produced. (Rec. Doc. 120-1 at 19-27). Therefore, the contention that Ms. Duplantis's e-mail is protected by the attorney-client privilege is moot, and there is no reason to protect Ms. Duplantis's e-mail forwarding Mr. LaBarge's e-mail to the other lawyers.

8. E-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 7, 2016 at 2:17 p.m. (Rec. Doc. 121-3 at 28-35). In this e-mail, Ms. Duplantis was forwarding to Mr. Hunt and Mr. Ralston e-mail correspondence from

12

Mr. Kreamer regarding the request that Phelps Dunbar turn its file over to Allen & Gooch. There is no request for legal advice and the attached e-mail correspondence summarized in Ms. Duplantis's e-mail was already produced. This Court finds that this e-mail is not protected by the attorney-client privilege.

9. E-mail from Mr. Ralston to Ms. Duplantis, with a carbon copy to Jeremy Grabill, dated December 12, 2016 at 3:01 p.m. and e-mail from Ms. Duplantis to Mr. Ralston dated December 12, 2016 at 1:16 p.m. (Rec. Doc. 121-3 at 36-38). According to the firm's website, Mr. Grabill is an attorney with Phelps Dunbar. In the earlier e-mail, Ms. Duplantis requested Mr. Ralston's approval of her proposed communication to Mr. Kreamer stating that all of Zloop's original records were being produced and that no records or file materials belonging to Zloop were being withheld from production. Mr. Ralston's response is a simple "looks fine to me." Neither of these communications is a request for or a rendering of legal advice. Instead, both address the factual issue of whether file materials and records were produced. Therefore, this Court finds that neither of these communications is protected by the attorney-client privilege.

10. E-mail from Mr. Ralston to Ms. Duplantis, with a carbon copy to Mr. Grabill, dated December 12, 2016 at 3:01 p.m. and e-mail from Ms. Duplantis to Mr. Ralston dated December 12, 2016 at 1:16 p.m. (Rec. Doc. 121-3 at 39-41). This is

a duplication of the e-mail correspondence designated as Item No. 9, above. As stated above, these e-mails are not protected by the attorney-client privilege.

11. E-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 16, 2016 at 4:53 p.m., with e-mail from Mr. Hunt to Ms. Duplantis and Mr. Ralston dated December 16, 2016 at 4:46 p.m.; e-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 16, 2016 at 4:45 p.m.; e-mail from Mr. Hunt to Ms. Duplantis and Mr. Ralston dated December 16, 2016 at 4:43 p.m.; e-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 16, 2016 at 4:37 p.m.; e-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 16, 2016 at 4:27 p.m. (Rec. Doc. 121-3 at 42-44). The earliest two of these e-mails are duplications of e-mails addressed above in Item No. 3. This Court has already determined that the e-mail sent at 4:27 p.m. is not privileged while the e-mail sent at 4:37 p.m. is protected by the attorney-client privilege. The later four e-mails all have to do with factual information obtained from Phelps Dunbar's accounting department regarding the payment of invoices from a retainer. Mr. Hunt suggests consulting with Jim O'Mara or Richard Montague. This Court determined from a review of the firm's website that those gentlemen are Phelps Dunbar lawyers at the firm's office in Jackson, Mississippi. However, there is no suggestion that legal advice for the firm be obtained from them; instead, the suggestion is that they might be able to assist with the merits of the claim that a portion of the attorneys' fees

14

collected from a retainer paid early in the litigation should be refunded to Zloop. The three latest e-mails have to do with the collection of data regarding billing from the firm's accounting department. This Court finds that none of those e-mails are protected from disclosure by the attorney-client privilege.

12.  E-mail from Mr. Hunt to Ms. Duplantis and Mr. Ralston dated December 16, 2016 at 4:46 p.m., together with e-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 16, 2016 at 4:45 p.m.; e-mail from Mr. Hunt to Ms. Duplantis and Mr. Ralston dated December 16, 2016 at 4:43 p.m.; e-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 16, 2016 at 4:37 p.m.; e-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 16, 2016 at 4:27 p.m. (Rec. Doc. 121-3 at 45-47). These e-mails are all duplicates of e-mails found in Item No. 11, above. This Court has already found that the only one of these e-mails that is privileged is the one sent at 4:37 p.m.

13.  E-mail from Mr. Hunt to Ms. Duplantis and Mr. Ralston dated December 16, 2016 at 4:46 p.m.; e-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 16, 2016 at 4:45 p.m.; e-mail from Mr. Hunt to Ms. Duplantis and Mr. Ralston dated December 16, 2016 at 4:43 p.m.; e-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 16, 2016 at 4:37 p.m.; e-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 16, 2016 at 4:27 p.m. (Rec. Doc. 121-3 at 48-50). These e-mails are duplicates of the e-mail

already addressed above in Item Nos. 11 and 12. The only one of these e-mails that is privileged is the one that was sent at 4:37 p.m.

14. E-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 16, 2016 at 4:37 p.m.; e-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 16, 2016 at 4:27 p.m. (Rec. Doc. 121-3 at 51-52). These are duplicates of the e-mails contained in the e-mail strings addressed in Item Nos. 11, 12, and 13, above. The e-mail sent at 4:37 p.m. is privileged while the others are not privileged.

15. E-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 16, 2016 at 4:37 p.m.; e-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 16, 2016 at 4:27 p.m. (Rec. Doc. 121-3 at 53-54). These are duplicates of the e-mails contained in the e-mail strings addressed in Item Nos. 11, 12, 13, and 14, above. The e-mail sent at 4:37 p.m. is privileged while the others are not privileged.

16. E-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 16, 2016 at 4:53 p.m., together with e-mail from Mr. Hunt to Ms. Duplantis and Mr. Ralston dated December 16, 2016 at 4:46 p.m.; e-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 16, 2016 at 4:45 p.m.; e-mail from Mr. Hunt to Ms. Duplantis and Mr. Ralston dated December 16, 2016 at 4:43 p.m.; e-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December

16, 2016 at 4:37 p.m.; e-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 16, 2016 at 4:27 p.m. (Rec. Doc. 121-3 at 55-57). This is a duplication of the e-mails in Item No. 11, above. As noted above, the e-mail sent at 4:37 p.m. is privileged while the other e-mails are not privileged.

17. E-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 7, 2016 at 4:00 p.m., together with e-mail from Ms. Duplantis to Mr. Hunt and Mr. Ralston dated December 7, 2016 at 2:17 p.m. (Rec. Doc. 121-3 at 58-65). The earlier e-mail is a duplication of an e-mail contained in Item No. 8, above. As noted, this Court has found that e-mail is not privileged. The later e-mail in this string passes on factual information to Mr. Hunt and Mr. Ralston regarding Mr. LaBarge's and Mr. Boston's objections to the Debtor's Chapter 11 Plan of Liquidation. No legal analysis was requested or provided. Accordingly, this e-mail is not subject to the attorney-client privilege.

To reiterate, this Court finds that: (1) the second and third sentences of the e-mail contained in Item No. 1, above, are protected from production on the basis of the attorney-client privilege because they contain a request for legal advice; (2) the e-mail contained in Item No. 2, above, is protected from production on the basis of the attorney-client privilege because it seeks legal advice on how to address conflict-of-interest issues during a conference with the Magistrate Judge; and (3) the e-mail sent at 4:37 p.m. that is part of the e-mail chain contained in Item No. 3, above, and

17

duplicated in several subsequent items, is protected from production on the basis of the attorney-client privilege because it contains a request for legal advice. For the reasons set forth above, this Court finds that all of the other e-mails sought to be protected from production are not protected by the attorney-client privilege and should promptly be produced by the defendants to the plaintiff. Accordingly,

IT IS ORDERED that the plaintiff's motion to compel (Rec. Doc. 111) is GRANTED IN PART and DENIED IN PART, and the defendants shall, not later than seven days after the date of this order, produce to the plaintiff all of the e-mails referenced above that are not protected by the attorney-client privilege.

Signed at Lafayette, Louisiana, this 21st day of March 2019.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE