UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

ZLOOP, INC.                        CIVIL ACTION NO. 6:18-cv-00031 (Lead)
                                                    6:18-cv-00032 (Member)

VERSUS                             JUDGE JUNEAU

PHELPS DUNBAR LLP, ET AL.          MAGISTRATE JUDGE HANNA

## REPORT AND RECOMMENDATION

Currently pending are the defendants' motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Rec. Doc. 7 in Civil Action No. 6:18-cv-00032 and Rec. Docs. 19 and 45 in Civil Action No. 6:18-cv-00031). The motions are opposed. The motions were referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. Oral argument was held on March 21, 2019. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that the motions be GRANTED IN PART and DENIED IN PART.

## Background

In 2014, Kendall Mosing sued Robert Boston, Robert LaBarge, Zloop, LLC, and Zloop, Inc., in Civil Action No. 6:14-cv-02608 on the docket of the United States

District Court for the Western District of Louisiana.[1]  Zloop, Inc. was the successor of Zloop, LLC, with Zloop, LLC having converted into Zloop, Inc. on March 26, 2014.[2]  Mr. Mosing had invested in Zloop, an electronic waste recycling company that was owned by Mr. Boston and Mr. LaBarge, and he asserted various claims for securities fraud, unfair trade practices, fraud, conversion, breach of contract, negligent misrepresentation, and detrimental reliance.

In September 2014, Phelps Dunbar LLP was retained to represent Mr. Boston, Mr. LaBarge, and Zloop, Inc. in Civil Action No. 6:14-cv-02608.[3]  Although the defendants claim that they were engaged solely with regard to venue and jurisdiction issues, it is undisputed that they continued to represent all three defendants after Mr. Mosing filed a motion for a temporary restraining order[4] based on allegations of fraudulent conduct by Mr. Boston and Mr. LaBarge including the alleged sale by Mr. Boston and Mr. LaBarge of equipment owned by Zloop, Inc. over which Mr. Mosing had a security interest.  When Mr. Mosing filed a lawsuit against Zloop, Inc.

---

[1]     A detailed procedural history of the lawsuit can be found in Rec. Doc. 130.

[2]     Rec. Doc. 1 at 7, 8 in Civil Action No. 6:14-cv-02608.

[3]     The engagement letter is found at Rec. Doc. 1-7 at 79 in Civil Action no. 6:18-cv-00031.

[4]     Rec. Doc. 36 in Civil Action No. 6:14-cv-02608.

in Texas state court in December 2014,[5] seeking to recover sums that he allegedly paid after Zloop, Inc. defaulted on a promissory note executed on behalf of Zloop, Inc. in favor of Patriot Bank, Phelps Dunbar was engaged to represent Zloop, Inc. in that lawsuit as well.  It is undisputed that Mr. Mosing filed a motion for summary judgment in the Texas lawsuit and equally undisputed that, in August 2015, on the eve of the hearing on the motion for summary judgment, Zloop, Inc. and two related entities filed for bankruptcy protection.

In November 2016, the Plan Administrator for the bankruptcy proceeding retained the Allen & Gooch law firm to represent Zloop, Inc. in the ongoing litigation in place of Phelps Dunbar.[6]  In December 2016, the bankruptcy court in Delaware confirmed a Chapter 11 Liquidation Plan in which Mr. Mosing was awarded an unsecured claim and control over the prosecution of Zloop, Inc.'s claims against third parties including Mr. Boston and Mr. LaBarge, effectively making Zloop, Inc. a plaintiff in Mr. Mosing's original lawsuit.  Additionally, it is undisputed that Mr. Boston and Mr. LaBarge were criminally prosecuted in North Carolina.

In April 2017, Zloop, Inc. filed the instant consolidated lawsuits against Phelps Dunbar and its individual attorneys Heather Duplantis, Michael D. Hunt,

---

[5]    A copy of the petition filed in that lawsuit is found at Rec. Doc. 1-7, Page ID# 542.  (This citation was used because the document was filed in several cases, and the document and page numbers have been overwritten, making them illegible.)

[6]    Rec. Doc. 121-3 at 5.

Kelly Romer Boudreaux, and Marc G. Matthews, for legal malpractice and other torts arising out of their representation of Zloop, Inc., Mr. Boston, and Mr. LaBarge.[7] Zloop, Inc.'s primary complaint is that there was a conflict of interest between Zloop, Inc. on the one hand and Mr. Boston and Mr. LaBarge on the other that allegedly resulted in the corporation being damaged by the joint representation.

In each of the consolidated lawsuits, the plaintiffs articulated three state-law claims: legal malpractice, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty. In Civil Action No. 18-cv-00031, the plaintiffs also asserted three bankruptcy-related claims. In the motions to dismiss that are currently before the court, the defendants seek dismissal of the state-law claims; the motions to dismiss do not address the bankruptcy-law claims. The three pending motions raise the same issues, which will be analyzed together.

## Law and Analysis

### Subject-Matter Jurisdiction

As a preliminary matter, this Court undertook a *sua sponte* evaluation of subject-matter jurisdiction and ordered the parties to brief that issue. (Rec. Doc. 135). The parties complied with the order. (Rec. Doc. 141, 142). Based on the parties' submissions, this Court now finds that the court has subject-matter

---

[7]    A detailed procedural history of these lawsuits is set forth in Rec. Doc. 130.

jurisdiction over both consolidated cases under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are diverse in citizenship.

## **The Applicable Law**

A federal court sitting in diversity must apply state substantive law and federal procedural law.[8]  Because these are a diversity cases, Louisiana's substantive law must be applied.[9]  To determine Louisiana law, federal courts look to the final decisions of the Louisiana Supreme Court.[10]  When the state's highest court has not decided an issue, the court must make an "Erie guess" as to how the state supreme court would decide the issue.[11]  In making such a guess, the federal court may rely upon state appellate court decisions, unless persuasive data convinces the court that the state supreme court would decide the issue differently.[12]  When making an Erie guess concerning Louisiana law, the Fifth Circuit relies upon "(1) decisions of the [Louisiana] Supreme Court in analogous cases, (2) the rationales and analyses

---

[8]      *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Coury v. Moss*, 529 F.3d 579, 584 (5th Cir. 2008).

[9]      See, e.g., *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009).

[10]      *Moore v. State Farm Fire & Casualty Co.*, 556 F.3d at 269.

[11]      *Temple v. McCall*, 720 F.3d 301, 307 (5th Cir. 2013); *Moore v. State Farm Fire & Casualty Co.*, 556 F.3d at 269.

[12]      *Guilbeau v. Hess Corporation*, 854 F.3d 310, 311-12 (5th Cir. 2017); *Temple v. McCall*, 720 F.3d at 307; *Herrmann Holdings Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 558 (5th Cir. 2002).

underlying [Louisiana] Supreme Court decisions on related issues, (3) dicta by the [Louisiana] Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which [Louisiana] courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries."[13]

## The Standard for Analyzing a Motion to Dismiss

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is properly granted when a defendant attacks the complaint because it fails to state a legally cognizable claim.[14]  To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[15]  The allegations must be sufficient "to raise a right to relief above the speculative level,"[16] and "the pleading must contain something more. . . than. . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."[17]  "While a complaint. . . does not need detailed factual allegations, a plaintiff's obligation to

---

[13]       *Gulf and Mississippi River Transp. Co., Ltd. v. BP Oil Pipeline Co.*, 730 F.3d 484, 488-89 (5th Cir. 2013) (quoting *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel, L.L.C.*, 620 F.3d 558, 564 (5th Cir. 2010) (quoting *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 199 (5th Cir. 2006))).

[14]       *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[15]       *Bell Atlantic v. Twombly*, 550 U.S. at 570.

[16]       *Bell Atlantic v. Twombly*, 550 U.S. at 555.

[17]       *Bell Atlantic v. Twombly*, 550 U.S. at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[18]  If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."[19]

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20]   "[D]etermining whether a complaint states a plausible claim for relief. . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[21] Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim."[22]

---

[18]    *Bell Atlantic v. Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted; emphasis added).  See, also, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[19]    *Bell Atlantic v. Twombly*, 550 U.S. at 570.

[20]    *Ashcroft v. Iqbal*, 556 U.S. at 678.

[21]    *Ashcroft v. Iqbal*, 556 U.S. at 679.

[22]    *Lormand v. US Unwired, Inc*., 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. at 556).  See, also, *In Re Southern Scrap*, 541 F.3d 584, 587 (5th Cir. 2008).

When considering a Rule 12(b)(6) motion to dismiss, a district court generally must limit itself to the contents of the pleadings, including any attachments thereto.[23] But the court may also consider matters outside the pleadings if those materials are matters of public record[24] or matters of which a court may take judicial notice.[25] Public records on file with the court are proper subjects for judicial notice, and the Fifth Circuit has expressly taken judicial notice of documents included in the records of related cases.[26]   The court must accept all well-pleaded facts as true, and view the facts in a light most favorable to the plaintiff.[27]   Conclusory allegations and unwarranted deductions of fact are not accepted as true,[28] and courts "are not bound

---

[23]    *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[24]    *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006); *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir.), cert. denied, 513 U.S. 868 (1994).

[25]    *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[26]    *NCNB Texas Nat. Bank v. Johnson*, 11 F.3d 1260, 1263 n. 2 (5th Cir. 1994) ("We take judicial notice of such documents as official public records on file with this circuit.") (citing *United States v. Hawkins*, 566 F.2d 1006, 1008 n. 2 (5th Cir.), cert. denied, 439 U.S. 848 (1978)).

[27]    *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[28]    *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498 (citing *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)).

to accept as true a legal conclusion couched as a factual allegation."[29]  Rule 12(b)(6) motions are viewed with disfavor, and they are rarely granted.[30]

## The Allegations Set Forth in the Complaints

The complaint filed in Mr. Mosing's suit against Mr. Boston, Mr. LaBarge, and Zloop, Inc. is quite lengthy and had multiple exhibits attached.  A cursory review of that complaint reveals that Mr. Mosing alleged that Mr. Boston and Mr. LaBarge used high pressure sales tactics, incomplete and inaccurate documents, and multiple fraudulent misrepresentations to induce Mr. Mosing to invest in Zloop.  Mr. Mosing articulated claims for the violation of state and federal securities laws, unfair trade practices, fraud, conversion, breach of contract, detrimental reliance, and negligent misrepresentation.

The complaints filed in these two consolidated cases are similarly lengthy, and multiple exhibits were filed along with the complaints.  As a factual backdrop to the three relevant causes of action, the plaintiff alleged,[31] *inter alia*, that Mr. Mosing was the victim of a fraudulent scheme perpetrated by Mr. Boston and Mr.

---

[29]    *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[30]    *Collins v. Morgan Stanley Dean Witter*, 224 F.3d at 498; *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[31]    The citations in this paragraph reference allegations made in Civil Action 6:18-cv-00031. The factual allegations made in Civil Action 6:18-cv-00032 are similar.

LaBarge (Rec. Doc. 1 at 5), that Phelps Dunbar's engagement letter did not mention a potential conflict of interest regarding the joint representation of Mr. Boston, Mr. LaBarge, and Zloop, Inc. (Rec. Doc. 1 at 8); that the defendants filed motions, memoranda, and objections dealing with merits issues in Mr. Mosing's lawsuit (Rec. Doc. 1 at 8); and that the defendants did not consider or discuss with their clients whether the three clients had differing interests (Rec. Doc. 1 at 9). The plaintiff alleged that Rule 1.7 of the Louisiana Rules of Professional Conduct obligated the defendants to decline the joint representation (Rec. Doc. 1 at 9), and that the defendants' failure to raise, disclose, or secure a waiver of the conflict of interest violated Rules 1.7, 1.8, and 1.13 of the Louisiana Rules of Professional Conduct. (Rec. Doc. 1 at 8). The plaintiffs alleged that the defendants' strategy during the joint representation favored Mr. Boston and Mr. LaBarge but was detrimental to the interests of Zloop, Inc. (Rec. Doc. 1 at 12-14, 23). They alleged that the Phelps Dunbar lawyers learned that there were problems with documents allegedly executed by Mr. Mosing, including identical, re-used signature pages (Rec. Doc. 1 at 16-17) and that Mr. Boston and Mr. LaBarge provided different factual information to Phelps Dunbar at different times (Rec. Doc. 1 at 18-19). The plaintiff alleged that the defendants did not report to or receive instructions from anyone other than Mr. Boston or Mr. LaBarge with regard to the formulation of a litigation strategy for Zloop, Inc. (Rec. Doc. 1 at 20-21, 23). The plaintiff alleged that, when Mr. Mosing

filed a motion for a temporary restraining order alleging that Mr. Boston and Mr. LaBarge were liquidating Zloop, Inc.'s assets in violation of Mr. Mosing's security interest, the defendants did not investigate whether Mr. Boston and Mr. LaBarge were actually liquidating Zloop, Inc.'s assets (Rec. Doc. 1 at 24) and focused its representation solely on the interests of Mr. Boston and Mr. LaBarge, to the detriment of their other client, Zloop, Inc. (Rec. Doc. 1 at 24).  The plaintiff alleged that, on April 2, 2015, at the hearing on Mr. Mosing's motion for a temporary restraining order, the parties agreed to a stand down order requiring that no action be taken to alienate or encumber any assets from which Mr. Mosing might be able to recover until a pending venue issue was resolved.  (Rec. Doc. 1 at 25-26).  The plaintiff further alleged, however, that Mr. Boston and Mr. LaBarge violated the stand down order.  (Rec. Doc. 1 at 27-28).  The plaintiff alleged that the defendants did not investigate Mr. Mosing's allegations that 20% of Zloop, Inc. was sold to an offshore investment fund in Belize.  (Rec. Doc. 1 at 31-33).  The plaintiff alleged that each communication that the defendants had with Mr. Boston and Mr. LaBarge was a communication with Zloop, Inc.'s officers and directors and could not be confidential with regard to Zloop, Inc.  (Rec. Doc. 1 at 54).  The plaintiff alleged that the defendants should have evaluated whether the interests of Zloop, Inc. conflicted with the interests of Mr. Boston and Mr. LaBarge (Rec. Doc. 1 at 51), should have discovered and disclosed the conflict of interest to Mr. Boston, Mr.

LaBarge, and Zloop, Inc., should have determined if informed consent to a waiver of the conflict was possible (Rec. Doc. 1 at 51), and should have declined the joint representation as required by Rule 1.16(a) of Louisiana's Rules of Professional Conduct (Rec. Doc. 1 at 51-52).

With regard to the lawsuit filed by Mr. Mosing in Texas, the plaintiff alleged that the defendants did not investigate the cause of Zloop's default on the note beyond listening to the stories told by Mr. Boston and Mr. LaBarge, did not report to or receive instructions from anyone at Zloop, Inc. other than Mr. Boston and Mr. LaBarge, and continued to focus their attention on their clients in the other lawsuit, Mr. Boston and Mr. LaBarge, rather than on Zloop, Inc. (Rec. Doc. 1 at 28). With regard to the lawsuit filed by Mr. Mosing in Louisiana, the plaintiff similarly alleged that the defendants focused their representation on two of their three clients (Mr. Boston and Mr. LaBarge) to the detriment of their third client, Zloop, Inc. (Rec. Doc. 1 at 20, 23, 25, 28, 31, 32, 33, 34). The plaintiff alleged that Mr. Boston and Mr. LaBarge looted Zloop, Inc.'s assets, that their actions resulted in Zloop, Inc. being forced to file for bankruptcy, resulted in Zloop, Inc. losing over $19 million in assets it had at the time of the bankruptcy filing, resulted in a debt to Mr. Mosing of $40 million on an unsecured claim, and resulted in the loss of the profits the company would have made but for their actions. (Rec. Doc. 1 at 72).

Based on the voluminous, detailed factual allegations set forth in the complaints, the plaintiff articulated claims for legal malpractice, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty.

**The Defendants' Arguments**

In support of their motions to dismiss, the defendants argued that the plaintiff failed to state a claim for legal malpractice because there was no conflict of interest, their engagement was limited in scope, Mr. Mosing is seeking preferential treatment, and the limited scope of the engagement relieved them of a duty to investigate.  They also argued that the plaintiff failed to state a breach of contract claim because any such claim is subsumed in the legal malpractice claim.  All of these arguments lack merit.  Finally, the defendants argued that the plaintiff failed to state a claim of aiding and abetting breach of fiduciary duty because there is no such cause of action under Louisiana law.  This argument is meritorious.

**A.    The Legal Malpractice Claim**

To establish a claim for legal malpractice under Louisiana law, a plaintiff must prove:  1) the existence of an attorney-client relationship; 2) negligent representation by the attorney; and 3) loss caused by that negligence.[32]  "An attorney is obligated to exercise at least that degree of care, skill, and diligence which is exercised by

---

[32]    *Teague v. St. Paul Fire and Marine Ins. Co.*, 2007-1384 (La. 02/01/08), 974 So.2d 1266, 1272; *Costello v. Hardy*, 03-1146 (La. 01/21/04), 864 So.2d 129, 138.

prudent practicing attorneys in his locality.  He is not required to exercise perfect judgment in every instance."[33]

It is undisputed that the defendants represented Mr. Boston, Mr. LaBarge, and Zloop, Inc. in the lawsuit filed by Mr. Mosing in Louisiana federal court and also represented Zloop, Inc. in the lawsuit brought by Mr. Mosing in Texas state court. Therefore, there is no dispute regarding the first element.  The plaintiff established the existence of an attorney-client relationship.

The complaints filed in these consolidated lawsuits alleged that the defendants provided negligent representation to Zloop, Inc. because they failed to properly address an alleged conflict of interest among their three clients.  Rule 1.7 of the Louisiana Rules of Professional Conduct states that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest."  The rule goes on to explain that a concurrent conflict of interest exists if "the representation of one client will be directly adverse to another client" or if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client."

A cursory review of the allegations set forth in the complaints filed in both of Mr. Mosing's lawsuits suggests the potential for a concurrent conflict of interest

---

[33]    *Ramp v. St. Paul Fire & Marine Ins. Co.*, 269 So.2d 239, 244 (La. 1972).

between Zloop, Inc. and Mr. Boston and Mr. LaBarge.  In the Louisiana lawsuit, Mr. Mosing sought to recover sums he invested in the electronic waste recycling business owned and operated by Mr. Boston and Mr. LaBarge under various variations of the Zloop moniker.  Mr. Mosing alleged that Mr. Boston and Mr. LaBarge made several material misrepresentations in the process of selling securities, with the list of alleged misrepresentations filling five pages of the complaint.[34]  The complaint also included allegations of fraud and conversion.[35]  The facts alleged support an inference that Mr. Boston and Mr. LaBarge may not have been acting with the best interest of Zloop, Inc. in mind, and it is alleged in the complaints filed in these consolidated lawsuits that the defendants took their instructions regarding Zloop, Inc. only from Mr. Boston and Mr. LaBarge, did not disclose the potential conflict of interest, did not discuss it with anyone else at Zloop, Inc., and took actions that were detrimental to Zloop, Inc.

In the Texas lawsuit, Mr. Mosing sought to recover sums he was required to pay when Zloop, Inc. defaulted on a loan.[36]  Although the defendants represented only Zloop, Inc. in the Texas litigation, Mr. Boston and Mr. LaBarge simultaneously were their clients along with Zloop, Inc. in the Louisiana litigation, and it is alleged

---

[34]    Rec. Doc. 1 at 54-58 in Civil Action No. 6:14-cv-02608.

[35]    Rec. Doc. 1 at 88-96 in Civil Action No. 6:14-cv-02608.

[36]    Rec. Doc. 1-7 at Page ID # 542.

in that lawsuit that the defendants took their instructions regarding Zloop, Inc. only from Mr. Boston and Mr. LaBarge, the same persons who presumably were responsible for the default on the loan at issue in the Texas litigation.  At a minimum, the potential for a conflict of interest existed with regard to the defendants' representation of Mr. Boston, Mr. LaBarge, and Zloop, Inc. in both underlying lawsuits and that potential conflict of interest is apparent from the allegations set forth in the complaints filed in those two lawsuits.  Thus, the complaints in these consolidated actions contain sufficient factual allegations to support the second element of the legal malpractice claim, i.e., negligent representation of a client.

With regard to the third element, causation, the complaints filed in these consolidated lawsuits expressly alleged that the negligent representation, which failed to acknowledge or properly address the alleged conflict of interest, damaged Zloop, Inc. because Mr. Boston and Mr. LaBarge alienated some of Zloop, Inc.'s assets, continued to do so even after the stand down order was in place, and sold a portion of the corporation to a Belize-based company, all of which was detrimental to the corporation and led to its bankruptcy and the liquidation of its remaining assets.  These allegations are sufficient to satisfy the pleading requirements relevant to the causation element at this stage of the litigation.

In summary, the complaints in these consolidated cases allege facts supporting all three elements of a legal malpractice claim.  The defendants argued, however,

16

that the plaintiff failed to state a cause of action because there actually was no conflict of interest between Zloop, Inc. on the one hand, and Mr. Boston and Mr. LaBarge on the other.  But whether there actually was a conflict of interest is a factual issue[37] that goes to the merits of the claim.  At this stage of the litigation, the plaintiff need not prove that there actually was a conflict of interest; instead, the plaintiff need only allege enough facts, which when taken as true, support a plausible legal malpractice claim based on an alleged conflict of interest.  The facts alleged in the complaints are that Mr. Boston and Mr. LaBarge engaged in negligent or perhaps fraudulent acts that were contrary to the best interest of the corporation but that the defendants represented Mr. Boston, Mr. LaBarge, and the corporation at the same time without investigating whether there was a conflict or advising the clients that there might be a conflict, and failed to reevaluate whether there might be a conflict when additional information came to light.  These factual allegations are sufficient to state a claim for legal malpractice based on an alleged conflict of interest, regardless of whether an actual conflict existed or not.

The defendants' second argument was that the plaintiff failed to state a valid legal malpractice claim because the defendants' representation of Mr. Boston, Mr. LaBarge, and Zloop, Inc. was limited in scope.  The defendants based this argument

---

[37]    *Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 171 n. 3 (5th Cir. 1979).

on the retainer letter they sent to Mr. Boston when the representation began. The letter states that Phelps Dunbar agreed to represent Mr. Boston, Mr. LaBarge, Zloop, LLC, and Zloop, Inc. with regard to the lawsuit brought by Mr. Mosing in Louisiana.[38] Thereafter, the letter states that "[t]he initial scope of our services will be focused on an assessment of venue and jurisdiction defenses. . . ."[39] The defendants contend that this sentence limits the scope of the representation to venue and jurisdiction issues only. This Court finds that whether the scope of the representation was limited as suggested by the defendants is a factual dispute that need not be resolved at this time.[40] Regardless of the scope of the representation, it is undisputed that the defendants did represent Mr. Boston, Mr. LaBarge, and Zloop, Inc. with regard to the underlying Louisiana litigation not only with regard to venue and jurisdiction issues but also with regard to merits-based issues raised in Mr. Mosing's motion for a temporary restraining order. Further, it is undisputed that the defendants simultaneously represented Zloop, Inc. in the underlying Texas litigation. These undisputed facts, coupled with the allegations set forth in the

---

[38]    Rec. Doc. 1-7 at 79.

[39]    Rec. Doc. 1-7 at 79.

[40]    This Court declines the defendants' invitation to decide the scope of the engagement at this stage of the litigation. However, this Court notes, as discussed at oral argument, that the adjective "initial," used in the engagement letter to modify the scope of the defendants' representation, is susceptible of many meanings, none of which is "exclusive" or "limited."

complaints filed in the instant consolidated actions, are sufficient to state a valid claim for legal malpractice regardless of the scope of the representation.

The defendants' third argument was that the plaintiff failed to state a valid legal malpractice claim because the limited scope of the representation relieved the defendants of a duty to investigate "anything beyond the venue and jurisdiction issue."[41]  This argument rests upon and reiterates the preceding argument regarding the scope of the defendants' representation.  In federal court, however, attorneys have both a legal and ethical duty to reasonably investigate the facts prior to filing pleadings with the court.[42]  Under Louisiana's Rules of Professional Conduct, a lawyer must act with reasonable diligence in representing a client,[43] which suggests at least a minimal duty to investigate the matter before making an appearance or filing pleadings.

In the retainer letter that Phelps Dunbar sent to Mr. Boston at the commencement of the representation, defendant Michael E. Hunt, on behalf of the law firm, stated that "we will need to thoroughly investigate the facts surrounding

---

[41]     Rec. Doc. 7-1 at 13 in Civil Action No. 6:18-cv-00032.

[42]     *In re Deepwater Horizon*, 845 F.3d 634, 640 n. 4 (5th Cir. 2017); *Callahan v. Schoppe*, 864 F.2d 44, 46 (5th Cir. 1989) ("Rule 11 of the Federal Rules of Civil Procedure imposes a duty of reasonable investigation into the facts and the law prior to filing a document with a court.").

[43]     Rule 1.3 of the Louisiana Rules of Professional Conduct.

these transactions."[44]  Thus, the defendants not only acknowledged that they had a duty to investigate but stated that they planned to take actions in furtherance of that duty.  Accordingly, this Court finds that the defendants had a duty to investigate the facts surrounding the claims asserted by Mr. Mosing in the two lawsuits, but the breadth of that duty is an issue going to the merits of the plaintiff's legal malpractice claim.  Therefore, this argument does not alter this Court's conclusion that the facts alleged in the complaints filed in the consolidated lawsuits are sufficient to state a legal malpractice claim upon which relief can be granted by the court.

The defendants' next argument is that the plaintiff failed to allege facts sufficient to satisfy the third element of a legal malpractice claim, i.e., causation. Linked to this argument is the defendants' argument that the plaintiff is actually attempting to establish injury to Mr. Mosing rather than injury to Zloop, Inc.  As noted above, however, the plaintiff expressly alleged that the defendants' joint representation of their three clients resulted in damage to the corporation because the defendants' actions blinded them to Mr. Boston and Mr. LaBarge's alienation of the corporation's assets, which led to the corporation's bankruptcy and a further liquidation of the corporation's remaining assets.  At this stage of the litigation, these allegations are sufficient to establish the causation element.

---

[44]    Rec. Doc. 1-7 at 79.

This Court concludes that the factual allegations set forth in the complaints in these consolidated lawsuits are sufficient to state a legal malpractice claim upon which relief can be granted.  For that reason, it is recommended that the motions to dismiss be denied to the extent that they seek dismissal of the plaintiff's legal malpractice claim.

## B.    <u>The Breach of Fiduciary Duty Claim</u>

In the complaints in these consolidated lawsuits, the plaintiff asserted claims for breach of fiduciary duty.  Under Louisiana law, "for a fiduciary duty to exist, there must be a fiduciary relationship between the parties."[45]    A fiduciary relationship exists between parties "when confidence is reposed on one side and there is resulting superiority and influence on the other."[46]    "The defining characteristic of a fiduciary relationship. . . is the special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor."[47] The elements of a claim for breach of fiduciary duty under Louisiana law are: (1) the existence of a fiduciary duty, (2) a violation of that duty by the fiduciary, and (3) damages resulting from the violation.[48]

---

[45]    *Scheffler v. Adams and Reese, LLP*, 2006-CC-1774 (La. 02/22/07), 950 So.2d 641, 647.

[46]    *Scheffler v. Adams and Reese, LLP*, 950 So.2d at 647 (internal quotation marks omitted).

[47]    *Scheffler v. Adams and Reese, LLP*, 950 So.2d at 648.

[48]    *U.S. Small Bus. Admin. v. Beaulieu*, 75 Fed. App'x 249, 252 (5th Cir. 2003) (citing *Omnitech International, Inc. v. The Clorox Co*., 11 F.3d 1316, 1330 (5th Cir. 1994), cert. denied,

The defendants "agree that an attorney owes its client a fiduciary duty."[49] The defendants argued, however, that the plaintiff failed to state a claim for breach of fiduciary duty because any such claim is subsumed within the plaintiff's legal malpractice claim. In support of that argument, the defendants relied upon a footnote in a reported decision from the Eastern District of Louisiana, in which the court said:

> In addition to claims for legal malpractice and negligent misrepresentation, Plaintiff asserts claims of negligence and breach of fiduciary duty. . . . However, because these claims must, of necessity, be based on the attorney-client relationship, they are encompassed in the Court's discussion of legal malpractice. . . . [T]he Court is skeptical that these claims can be maintained separate from that labeled "legal malpractice."[50]

A single court's skepticism does not constitute controlling authority for the cited proposition. Further, in another reported decision, the Eastern District said: "A claim for breach of fiduciary duty is separate and apart from a claim of legal malpractice. . . ."[51] In a footnote in yet a third case, a court sitting in the Eastern

---

513 U.S. 815 (1994); *Brockman v. Salt Lake Farm Partnership*, 33,938 (La. App. 2 Cir. 10/04/00), 768 So.2d 836, 844, writ denied, 777 So.2d 1234 (La. 12/15/00).

[49]     Rec. Doc. 19-1 at 17.

[50]     *SCB Diversified Mun. Portfolio v. Crews & Associates*, No. 09-7251, 2012 WL 13708, at *4 n. 1 (E.D. La. Jan. 4, 2012).

[51]     *Hiern v. Sarpy*, No. 94-835, 1995 WL 640528, at *13 (E.D. La. Oct. 31, 1995).

District explained that "[i]f a claim involves a lawyer's 'self-dealing or a breach of the duty of loyalty,' then it is a breach of fiduciary duty claim."[52]

The very essence of the rules regarding conflicts of interest is a delineation of the loyalties owed by an attorney to his client, particularly in the situation presented here in which the attorney has multiple clients with allegedly differing interests. The Louisiana Supreme Court has recognized that the principle of undivided loyalty is firmly embedded in Rule 1.7 of the Louisiana Rules of Professional Conduct.[53] Accordingly, it is plausible that the plaintiff's claims based on the alleged conflict of interest between Mr. Boston and Mr. LaBarge on one side and Zloop, Inc. on the other are claims concerning the loyalty owed by the defendants to each of their clients. Germane to the issues presented in the defendants' motions, one Louisiana court has observed that "when an attorney is retained to represent a corporation, the attorney owes his duty (and loyalty) to that corporation and the attorney must, within the bounds of law, pursue the best interests of the corporation in accordance with the lawful instructions of the corporation's management."[54] Accordingly, the plaintiff's breach of contract claim may plausibly be interpreted as a claim based on an alleged

---

[52]    *In re Queyrouze*, 580 B.R. 671, 678 n. 14 (E.D. La. 2017) (citing *Gerdes v. Cush*, 953 F.2d 201, 204-06 (5th Cir. 1992)).

[53]    *Teague v. St. Paul Fire and Marine Ins. Co.*, 974 So.2d at 1272.

[54]    *Desire Narcotics Rehabilitation Center, Inc. v. White*, 97-2758 (La. App. 4 Cir. 04/14/99), 732 So.2d 144, 146-47.

breach of the defendant attorneys' duty of loyalty owed to their client, Zloop, Inc. Consequently, it may be a breach of fiduciary duty claim. Thus, the defendants have not established that the plaintiff's breach of fiduciary duty claim is duplicative of its legal malpractice claim. For that reason, it is recommended that the motions to dismiss be denied to the extent that they seek dismissal of the plaintiff's breach of fiduciary duty claim.

## C.    The Aiding and Abetting Claim

The plaintiff's third claim asserts that the defendants aided and abetted Mr. Boston and Mr. LaBarge in breaching the fiduciary duties that they owed to Zloop, Inc. as officers and directors of Zloop, Inc. Mr. Boston allegedly was the CEO of Zloop, Inc. and the chairman of its board of directors at relevant times, while Mr. LaBarge allegedly was the president and secretary of Zloop, Inc. and a member of its board of directors.[55] Zloop, Inc. was organized under Delaware law.[56] Under both Louisiana law[57] (the substantive law to be applied in these consolidated

---

[55]    Rec. Doc. 1 at 8.

[56]    Rec. Doc. 141-3 at 5.

[57]    La. R.S. 12:226 (A) states: "Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its members and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions." See, also, *C & B Sales & Service, Inc. v. McDonald*, 95 F.3d 1308, 1314 (5th Cir. 1996) ("Corporate officers have a fiduciary duty to their companies.").

lawsuits) and under Delaware law[58] (where Zloop, Inc. was organized), the officers and directors of a corporation owe a fiduciary duty to the corporation. Under Delaware law, there is a cause of action for aiding and abetting another to breach his fiduciary duties,[59] but no such cause of action exists under Louisiana law absent the existence of a conspiracy.[60] The plaintiff's complaints do not allege the existence of a conspiracy. Accordingly, to the extent that Louisiana law applies, the plaintiff has not stated a valid claim for aiding and abetting the breach of fiduciary duties.

The plaintiff argued, however, that Delaware law applies and affords a cause of action against the defendants for aiding and abetting breach of fiduciary duty. To state a claim for aiding and abetting a breach of fiduciary duty under Delaware law, a plaintiff must plead four elements: (i) the existence of a fiduciary relationship; (ii) a breach of that relationship; (iii) knowing participation in the breach by a defendant who is not a fiduciary; and (iv) damages proximately caused by the breach.[61]

---

[58]    *Gantler v. Stephens*, 965 A.2d 695, 709 (Del. 2009).

[59]    See, e.g., *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001).

[60]    *Murray v. Cannon Cochran Management Services, Inc*., No. 14-310-JWD-RLB, 2014 WL 5794997, at *14-16 (M.D. La. Nov. 6, 2014); *National Union Fire Ins. Co. of Pittsburgh v. Hibernia National Bank, N.A.*, No. Civ. A. 01-0788, 2001 WL 34085607, at *6 (W.D. La. Nov. 28, 2001); *Guidry v. Bank of LaPlace*, 94-1758 (La. App. 4 Cir. 09/15/95), 661 So.2d 1052, 1057 ("In the absence of a conspiracy, there is no distinct cause of action for aiding and abetting under Louisiana law.").

[61]    *Malpiede v. Townson*, 780 A.2d at 1096.

To determine which state's law applies in a diversity case, a federal district court applies conflicts of law principles of the forum state, here Louisiana.[62] "[U]nder Louisiana law, claims for breach of fiduciary duty can arise out of contract, if they arise from the breach of a special obligation between the parties; such claims can also lie in tort, if they arise from the violation of a general duty."[63] This Court finds that the type of claims asserted in these consolidated lawsuits are contractual or quasi-contractual claims since they arise out of the engagement of an attorney to provide legal services to a client. The Louisiana Supreme Court has recognized that "[t]he attorney-client relationship is contractual in nature and is based upon the express agreement of the parties as to the nature of work to be undertaken by the attorney."[64]

The conflicts of law statute pertinent to contractual claims is Louisiana Civil Code Article 3537, which provides that "an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." The article then lists the factors to be

---

[62]    *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Coury v. Moss*, 529 F.3d at 584.

[63]    *Sierra v. Halliburton Energy Services, Inc.*, No. 6:17-CV-1002, 2018 WL 2947118, at *3 n. 7 (W.D. La. June 12, 2018) (citing *Babin v. Quality Energy Servs., Inc.*, 877 F.3d 621, 626 (5th Cir. 2017)).

[64]    *Grand Isle Campsites, Inc. v. Cheek*, 262 So.2d 350, 359 (La. 1972).

considered, including (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) policies such as facilitating the orderly planning of transactions, promoting multistate commercial intercourse, protecting one party from undue imposition by the other, the needs of the interstate and international systems, upholding the justified expectations of parties, and minimizing the adverse consequences of subjecting a party to the laws of more than one state.

An alleged breach of fiduciary duty by an officer or director of a corporation relates to the internal workings of the corporation.  Therefore, under the internal affairs doctrine, whether a fiduciary duty was breached should be resolved under the laws of the state that created the corporation.  The internal affairs doctrine is a conflict-of-laws principle that was "designed to make sure that the law of only one state shall govern the internal affairs of a corporation or other association."[65]  But different conflicts principles apply when the rights of third parties external to the corporation are at issue.[66]  The internal affairs doctrine does not apply to disputes

---

[65]    *CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 78 (1987).  See, also, *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982).

[66]    *Alphonse v. Arch Bay Holdings, L.L.C.*, 548 Fed. App'x 979, 986 (5th Cir. 2013) (quoting *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983)). See, also, In re Verilink Corp., 408 B.R. 420, 425 (Bkrtcy.N.D.Ala.,2009) rev'd on other grounds

that involve people or entities that are not part of the corporation.[67]  The defendants in this lawsuit are third parties to the corporation's inner workings and therefore are not governed by the internal affairs doctrine.

Here, Mr. Boston, Mr. LaBarge, and Zloop, Inc. were not Louisiana citizens but they were sued in Louisiana by a Louisiana citizen, and they hired a Louisiana law firm to defend them in that litigation.  They then again hired the same Louisiana law firm to defend them in Texas litigation.  This Court finds that, under the internal affairs doctrine, any breach of a fiduciary duty owed by Mr. Boston or Mr. LaBarge would be governed by Delaware law because they were officers and directors of a corporation organized under Delaware law.  But the dispute presented in these consolidated lawsuits does not center on Mr. Boston or Mr. LaBarge's alleged breach of duties that they owed to Zloop, Inc.  Instead, these consolidated lawsuits center on the Louisiana counsel hired to represent those parties and whether they assisted Mr. Boston or Mr. LaBarge in breaching duties that those gentlemen owed to Zloop, Inc.  The lawyers were not officers or directors of Zloop, Inc., and for that reason, they are not subject to the same rule that binds Mr. Boston and Mr. LaBarge.

---

410 BR 697 (N. D. Alabama 2009) (holding that the internal affairs doctrine does not apply to a corporation's lawyers).

[67]    *Nano-Proprietary, Inc. v. Canon Inc*., No. A-05-CA-258-SS, 2007 WL 628792, at *3 (W.D. Tex. Feb. 22, 2007), aff'd in part and rev'd in part, 537 F.3d 394 (5th Cir. 2008) ("the internal affairs doctrine governs a corporation's 'internal' affairs, not its arms-length dealings with third parties.").

As to the aiding and abetting claim asserted in these consolidated lawsuits, it is the policies of Louisiana that would be most seriously impaired if its own laws were not applied.  The defendants are all members of a Louisiana law firm and all but one of them is a Louisiana resident and domiciliary.  The attorney-client relationship was entered into in Louisiana and the first lawsuit for which counsel was retained was litigated in Louisiana.  Any aiding and abetting occurred in Louisiana, where the lawyers lived and worked.  Thus, the place of the conduct was in Louisiana.  Weighing the facts alleged, this Court concludes that Louisiana law applies to the claim for aiding and abetting the breach of fiduciary duty.  This Court recognizes the plaintiff's argument regarding the internal affairs doctrine, which is another conflicts of law principle.  However, this Court agrees with the reasoning articulated by another court in this circuit that the internal affairs doctrine, to the extent that it conflicts with the Louisiana conflicts of law analysis does not control.[68] Since there is no cause of action for aiding and abetting a breach of a fiduciary duty under Louisiana law, the plaintiff has not stated such a claim in these consolidated lawsuits.  Therefore, it is recommended that the defendants' motions to dismiss should be granted to the extent that they seek dismissal of the plaintiff's claims of aiding and abetting the breach of a fiduciary duty.

---

[68]    *Broyles v. Cantor Fitzgerald & Co*., No. 10-854-JJB-SCR, 2014 WL 6886158, at *4-5 (M.D. La. Dec. 8, 2014).

## **Conclusion**

For the foregoing reasons, this Court recommends that the defendants' motions to dismiss (Rec. Doc. 7 in Civil Action No. 6:18-cv-00032 and Rec. Docs. 19 and 45 in Civil Action No. 6:18-cv-00031) should be GRANTED IN PART and DENIED IN PART.  More particularly, it is recommended that the motions should be GRANTED with regard to the plaintiff's claim for aiding and abetting the breach of fiduciary duties but DENIED in all other respects.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual

findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[69]

Signed at Lafayette, Louisiana, this 27th day of March 2019.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[69]    See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).